**K&L GATES LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com

Attorneys for Defendants
WeWoreWhat LLC, Onia, LLC and
Danielle Bernstein

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CV COLLECTION LLC, a New York limited liability company, d/b/a The Great Eros,<br><br>             Plaintiff,<br><br>   vs.<br><br>WEWOREWHAT, LLC, et al.,<br><br>             Defendants. | Case No. 2:20-cv-10290-RGK-AS<br><br>**DEFENDANTS WEWOREWHAT LLC, ONIA, LLC AND DANIELLE BERNSTEIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER**<br><br>DATE: March 1, 2021<br>TIME: 9:00 am<br>CTRM: 850<br>COMPLAINT FILED: November 10, 2020<br><br>JUDGE: HON. R. GARY KLAUSNER |

1

**TABLE OF CONTENTS**

2

**Page**

3   I.   INTRODUCTION ....................................................................................... 1

4

5   II.   RELEVANT FACTUAL BACKGROUND ................................................ 2

6   III.   LEGAL STANDARD ............................................................................... 5

7

8        A.   Standard for Dismissal ................................................................. 5

9        B.   Transfer Pursuant to 28 U.S.C § 1404(a) ................................... 6

10

11  IV.   ARGUMENT ............................................................................................. 7

12       A.   The Court should Dismiss this Action under Rule 12(b)(3) ........ 7

13

14       B.   Alternatively, the First-to-File Rule Compels Dismissal, Stay, or
             Transfer of this Action in Favor of the First-Filed Action. ......... 9

15

16            1.   The New York Action Was Filed First ................................. 9

17

18            2.   The Parties In Both Actions Are The Same ........................ 10

19            3.   The Issues In Both Actions Are Substantially Similar ........ 10

20

21       C.   No Compelling Circumstances Bar Application Of The First-To-File
             Rule Here ...................................................................................... 11

22

23            1.   Defendants Commenced The New York Action In Good Faith 11

24

25            2.   The New York Action Is Neither Anticipatory Nor An Attempt
                  At Forum Shopping .......................................................... 12

26

27            3.   The New York Action Is Convenient For Both Parties ........ 14

28

i

D.  Alternatively, This Action Should Be Transferred To The Southern District Of New York Under 28 U.S.C. § 1404(a) ............................ 14

    1.  Plaintiff Could Have Brought This Action in the Southern District of New York .................................................................. 14

    2.  The Balance of The Convenience Factors Favors the Southern District of New York. ............................................................. 15

        a.  Factors 1, 2, And 9 Are Not Applicable And Do Not Alter The Transfer Analysis .......................................... 15

        b.  Factor 3 Is Neutral Or, At Best, Only Slightly Disfavors Transfer .................................................................... 15

        c.  Factors 4 And 5 Weigh In Favor Of Transfer ............... 16

        d.  Factors 6, 7, And 8 Weigh In Favor Of Transfer .......... 16

        e.  Factor 10 Favors Transfer To The Southern District Of New York ...................................................................... 17

    3.  This Action Should be Transferred In the Interests of Justice . 17

V.  CONCLUSION ............................................................................... 18

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER**

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**Cases**

5

*Adobe Sys. Inc. v. Trinity Software Distribution, Inc.*,

6

No. C 12-1614 SI, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) ...................11, 15

7

*Alltrade, Inc. v. Uniweld Prods., Inc.*,

8

946 F.2d 622 (9th Cir. 1991) ...........................................................................5, 8, 10

9

10

*Church of Scientology v. U.S. Dep't of the Army*,

11

611 F.2d 738 (9th Cir. 1979) ...................................................................................8

12

*Continental Grain Co. v. The Barge FBL-585*,

13

364 U.S. 19 (1960)...................................................................................................17

14

15

*Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*,

16

No. 1:08-cv-1246, 2009 WL 874513 (E.D. Va. Mar. 27, 2009)..............................15

17

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,

18

19

179 F.R.D. 264 (C.D. Cal. 1998)......................................................................*passim*

20

*Hatch v. Reliance Ins. Co.*,

21

758 F.2d 409 (9th Cir. 1985) .....................................................................................6

22

*Hoffman v. Blaski*,

23

363 U.S. 335 (1960)....................................................................................................6

24

25

*Int'l Growers Supply, Inc. v. Atlantis Hydroponics, Inc.*,

26

No. CV-1203274, 2012 WL 13013415 (C.D. Cal. Aug. 8, 2012) .............................9

27

28

iii

*Italian Colors Rest. v. Am. Express Co.*,

    No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ....................... 15

*Jolly v. Purude Pharma LP*,

    2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ......................................... 16

*Jones v. GNC Franchising, Inc.*,

    211 F.3d 495 (9th Cir. 2000) .............................................................. 6

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,

    787 F.3d 1237 (9th Cir. 2015) ......................................................... 5, 9

*KTS Karaoke, Inc. v. EMI Blackwood Music, Inc.*,

    No. cv-1300915, 2013 WL 12171968 (C.D. Cal. Mar. 25, 2013) .......................... 12

*Mindscope Prod. v. Ontel Prod. Corp.*,

    No. cv-16-2066, 2016 WL 7479358 (C.D. Cal. June 16, 2016) ............................ 11

*Omnicell, Inc. v. Medacist Sols. Grp., LLC*,

    272 F.R.D. 469 (N.D. Cal. 2011) ......................................................... 5

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,

    678 F.2d 93 (9th Cir. 1982) ........................................................... 5, 9

*Pebble Beach Co. v. Caddy*,

    453 F.3d 1151 (9th Cir. 2006) ....................................................... 11, 15

*Puri v. Hearthside Food Sols. LLC*,

    No. 11-cv-8675-JFW, 2011 WL 6257182 (C.D. Cal. Dec. 13, 2011) .............*passim*

*Roling v. E\*Trade Secs., LLC*,

    756 F. Supp. 2d 1179 (N.D. Cal. 2010)................................................... 13

iv

*Ruckus Wireless, Inc. v. Harris Corp.*,

    2012 WL 588792 (N.D. Cal. Feb. 22, 2012) ............................................................... 8

*Stomp, Inc. v. Neato, LLC*,

    61 F. Supp. 2d 1074 (C.D. Cal. 1999) ................................................................... 12

*Strukmyer LLC v. Inifinite Financial Solutions*,

    No. 3:13-cv-3798, 2013 WL 6388563 (N.D. Tex. Dec. 5, 2013) ........................... 11

*Van Dusen v. Barrack*,

    376 U.S. 612 (1964) ............................................................................................... 5

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................... *passim*

28 U.S.C. § 1406(a) ................................................................................................... 5

28 USC § 1391(b) ........................................................................................... 4, 6, 14

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................................................... 13

Fed. R. Civ. P. 12(b) ....................................................................................... *passim*

Fed. R. Civ. P. 45 ................................................................................................... 16

1   I.   **INTRODUCTION**

2         Plaintiff CV Collection, LLC d/b/a The Great Eros's ("Plaintiff") improperly

3   brings this action in the Central District of California against Defendants

4   WeWoreWhat, LLC ("WeWoreWhat"), Onia, LLC ("Onia"), and Danielle Bernstein

5   ("Bernstein") (collectively, "Defendants").  This action has no connection to this

6   District and, thus, appears to be an improper attempt at forum-shopping to avoid a

7   pending federal action in New York.  Thus, this action should be dismissed based on

8   improper venue under Federal Rule of Civil Procedure 12(b)(3), as well as under the

9   first-to-file rule.  With no connections to this District, at the very least, this Court

10  should transfer this action to New York so that it may be consolidated with the pending

11  action.

12        As set forth herein, this case presents a straightforward application of the first-

13  to-file rule, which allows the Court to dismiss, stay, or transfer the complaint in view

14  of a first-filed declaratory judgment action in the Southern District of New York (the

15  "New York Action").  *See* Ex. A to Declaration of Christina N. Goodrich ("Goodrich

16  Decl.").  The New York Action requests a finding that WeWoreWhat and Onia's use

17  of their Silhouettes Design does not infringe Plaintiff's CV Design.  *Id*. at ¶ 1.  Nearly

18  a month later, on November 10, 2020, Plaintiff filed the instant action alleging

19  copyright infringement and unfair competition under the Lanham Act of ***the same CV***

20  ***Design***.  *See* ECF No. 1.  The New York Action and this action are mirror images of

21  one another—both concern the same dispute between the same parties over the right to

22  use the same designs.  The chronology of the two actions, the similarity the parties,

23  and the similarity of the issues thus bring this action squarely within the well-

24  established "first-to-file" rule, and the Court should dismiss this action in favor of the

25  New York Action.  To the extent the Court does not find dismissal appropriate, the

26  Court should stay or transfer this action in favor of the New York Action.

27  ///

28  ///

---

1

1      Separate from the first-to-file rule, grounds for transfer also exist based on 28
2  U.S.C. Section 1404(a).[1]  All parties have sufficient connections to the Southern
3  District of New York, evidence and proof is available in the Southern District of New
4  York, and consolidation of these two related actions would avoid duplicative litigation
5  and potentially inconsistent results.  Thus, the interests of justice together with the
6  convenience of the parties and witnesses also favors transfer of this action to the
7  Southern District of New York.

8  **II.**    **RELEVANT FACTUAL BACKGROUND**

9      Nearly all of the parties in this action are residents of New York, and reside in
10  the Southern District of New York.  *See* ECF No. 1 at ¶ 11; *see also* Ex. A to Goodrich
11  Decl. at ¶¶ 2–4; Ex. F to Goodrich Decl. at ¶ 4.  All of the relevant evidence and
12  witnesses for WeWoreWhat, Onia, Bernstein, and Plaintiff are in New York.  *See* ECF
13  No. 1 at ¶ 11; *see also* Goodrich Decl. at ¶¶ 7–10.

14      Bernstein formed WeWoreWhat to sell her own fashion lines, and in 2016, she
15  collaborated with lifestyle brand Onia and designed her first WeWoreWhat x Onia
16  swimwear capsule collection.  *See* Ex. C to Goodrich Decl. at 2.  In 2018, Bernstein
17  brought both of her brands under one roof with the launch of Shop WeWoreWhat.  *See*
18  Ex. C to Goodrich Decl. at 2.  Onia, a lifestyle brand inspired by modern voyagers,
19  was co-founded by Carl Cunow and Nathan Romano in 2009.  *See* Ex. D to Goodrich
20  Decl. at 1.  As part of the WeWoreWhat x Onia swimwear collection, the Silhouettes
21  Design, shown below, was independently created for WeWoreWhat by WeWoreWhat
22  and Onia designers:

---

[1]  Transfer pursuant to 28 U.S.C. Section 1406 is appropriate for the same reasons as
pursuant to 28 U.S.C. Section 1404.



*See* Ex. A to Goodrich Decl. at ¶ 24.

On August 10, 2020, Plaintiff's counsel sent WeWoreWhat a "Cease & Desist Notice" purporting to object to the Silhouettes Design. *See* Ex. B-1 to Goodrich Decl. The letter alleged, *inter alia*, that the Silhouettes Design, which was independently created for WeWoreWhat, was an "unauthorized reproductions of our client's famous artwork and trade dress." *See* Ex. B-1 to Goodrich Decl. at 1. Plaintiff alleged in its August 10 letter that WeWoreWhat's use of the Silhouettes Design violated "the Lanham Act, and copyright infringement, under U.S. and California law." *See* Ex. B-1 to Goodrich Decl. at 1.

///

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER**

On August 13, 2020, Defendants' counsel responded to the August 10 letter, explaining that they had investigated the design process for the Silhouettes Design, and confirmed that the Silhouettes Design was independently created, and that WeWoreWhat "did not copy, use, or reproduce any artwork belonging to The Great Eros," nor did anyone at WeWoreWhat or associated with WeWoreWhat ever purchase product from The Great Eros or receive product wrapped in the tissue paper. *See* Ex. B-2 to Goodrich Decl. at 1.

The last email sent by Defendants' counsel was dated August 18, 2020, and again requested substantiation for Plaintiff's claims. Ex. B to Goodrich Decl. at ¶ 12. No such evidence was ever provided by Defendant. *Id*. at ¶ 13. Nor did Plaintiff's counsel accept the offer by Defendants' counsel to discuss the alleged issues by phone. *Id*.

On October 13, 2020, Plaintiff's counsel sent an email that included a draft complaint alleging the same copyright infringement and claims for unfair competition under the Lanham Act and states law claims regarding unfair business practices, which did not include any of the third party retailers named as additional defendants in this present action. *See generally* Ex. B-3 to Goodrich Decl.

On October 15, 2020, WeWoreWhat and Onia filed suit against Plaintiff for a declaration that they did not infringe the CV Design and that no acts of unfair competition under the Lanham Act be found. *See* Ex. A to Goodrich Decl. at ¶ 1.

On November 10, 2020, Plaintiff commenced the current suit, requesting that this Court find copyright infringement and unfair competition under the Lanham Act. *See* ECF No. 1. On January 11, 2021, Plaintiff answered the complaint in the New York Action. *See* Ex. F to Goodrich Decl.

Defendants agreed to accept service in the current suit, and the parties have stipulated to an extension of the deadline for Defendants to answer until January 25, 2021. *See* ECF No. 12.

///

4

Pursuant to Local Rule 7-3, the parties conferred multiple times on Defendants' motion to dismiss, stay, or transfer, including on at least January 12, 14, 15, 20, and 22, 2021. *See* Goodrich Decl. at ¶ 13. In follow up to a conference, on January 15, 2021, a draft of Defendants' memorandum in support of Defendants' motion to dismiss, stay, or transfer was sent to Plaintiff along with a request for an additional meet and confer. *Id.* The parties again conferred on January 20, 2021. *Id.* An agreement could not be reached. *See* Goodrich Decl. at ¶ 14.

## III.   LEGAL STANDARD

### A.   Standard for Dismissal

A court should dismiss an action for improper venue under Federal Rule of Civil Procedure 12(b)(3) where the requirements of 28 USC § 1391(b) have not been met. Under Section 1391(b), venue is proper only in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 USC § 1391(b). "When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings. *Id.* Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper." *Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 472 (N.D. Cal. 2011). Under 28 U.S.C. § 1406(a), "if the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought." *Id.*

Under the well-established "first-to-file rule," district courts may dismiss, stay, or transfer an action when a similar complaint has already been filed in another district.

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER**

1  *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). As this

2  Court has noted, the first-to-file rule stems from the "generally recognized doctrine of

3  federal comity which permits a district court to decline jurisdiction over an action" in

4  the event of duplicative litigation. *Puri v. Hearthside Food Sols. LLC*, No. 11-cv-

5  8675-JFW, 2011 WL 6257182, at *1 (C.D. Cal. Dec. 13, 2011). The Ninth Circuit

6  recognizes this rule and thus gives priority to a first-filed suit in the absence of

7  compelling circumstances favoring precedence of the later-filed suit. *See Alltrade*, 946

8  F.2d at 628; *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237

9  (9th Cir. 2015) (affirming stay of proceedings in light of previously filed interpleader

10  action involving same issues); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th

11  Cir. 1982) (affirming dismissal of California action in light of first-filed Florida action

12  where both suits sought determination of validity of the same patents).

13  **B.      Transfer Pursuant to 28 U.S.C § 1404(a)**

14          Section 1404(a) provides for the transfer of actions to other districts based on

15  "the convenience of the parties and witnesses [and] the interests of justice." 28 U.S.C

16  § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy and

17  money and to protect litigants, witnesses and the public against unnecessary

18  inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)

19  (citations omitted). Courts determine 1404(a) motions according to an "individualized,

20  case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising,*

21  *Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotations omitted).

22          On a motion to transfer under §1404(a), the threshold inquiry is whether the

23  action sought to be transferred "might have been brought" in the district to which

24  transfer is requested. *See Hoffman v. Blaski,* 363 U.S. 335, 344 (1960); *Hatch v.*

25  *Reliance Ins. Co.,* 758 F.2d 409, 414 (9th Cir. 1985). Then there are three main factors

26  to be evaluated: (1) the convenience of the parties; (2) the convenience of the

27  witnesses; and (3) the interest of justice. *Guthy-Renker Fitness, L.L.C. v. Icon Health*

28

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER**

*& Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998).  In weighing these factors, relevant considerations include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of access to sources of proof, (9) the presence of a forum selection clause, and (10) the public policy of the forum state.

*Jones*, 211 F.3d at 498–99; *see also Puri*, 2011 WL 6257182 at *2.

## IV.   ARGUMENT

### A.   The Court should Dismiss this Action under Rule 12(b)(3)

This case should have been brought in the Southern District of New York where a mirror image action is pending—thus, venue in the Central District of California is improper.  First, nearly all of the parties in this action are residents of New York, and reside in the Southern District of New York.  *See* ECF No. 1 at ¶ 11; *see also* Ex. A to Goodrich Decl. at ¶¶ 2–4; Ex. F to Goodrich Decl. at ¶ 4.  Accordingly, venue cannot be based on the residency of the parties under Section 1391(b)(1).  This is confirmed by Plaintiff's sole allegation regarding why it believes venue in this District is proper under Section 1391(b)(2)—"because a substantial part of the events or omissions giving rise to the claims occurred in this District in that, *inter alia*, the infringing products were sold here."  ECF No. 1 at ¶ 10.

However, Plaintiff's claims rest on an alleged an act of copying by Ms. Bernstein who allegedly "visited the showroom of Plaintiff's sales representative prior to producing the Infringing Goods, and inquired about obtaining Plaintiff's products in

1  exchange for promoting The Great Eros through her social media channels."[2] *Id.* at

2  ¶ 5.  Notably missing from this statement is where this showroom was located.  Next

3  Plaintiff alleges that "Ms. Bernstein, WWW, and/or Onia subsequently purchased

4  products from Plaintiff that were wrapped in CV's trademark tissue paper, bearing the

5  CV Design; and instructed their pattern makers to copy the CV Design for use on the

6  Infringing Goods."  *Id.*  Again missing from this allegation is any specific location

7  where the allege copying would have taken place, which is unsurprising given that

8  both WeWoreWhat's and Onia's designers work at their principal places of business in

9  New York City, and those locations are where designs would be created and samples

10  would be made.  *See* Goodrich Decl. at ¶¶ 7–10.  As Plaintiff has not alleged facts

11  showing (nor actually show) a substantial part of the events or omissions giving rise to

12  its claims occurred in California, it is stuck alleging venue is proper because of

13  "infringing products were sold here."  ECF No. 1 at ¶ 10.  In fact, in its answer to the

14  complaint in the New York Action, Plaintiff has admitted that venue is proper in New

15  York.  *See* Ex. A to Goodrich Decl. at ¶8 ("Venue is proper in this District under 28

16  U.S.C. §§ 1391(b) and 1391(c) because, a substantial part of the events giving rise to

17  Plaintiffs' claims occurred in this District, Plaintiffs are being harmed in this District,

18  and because the Defendant is subject to personal jurisdiction in this District."); *see also*

19  Ex. A to Goodrich Decl. at ¶ 8 ("Admitted").

20      As Plaintiff cannot make even a prima facie showing that venue is proper in the

21  Central District of California, the Court should dismiss this action.[3]

22  ///

23  ///

24  ///

25  —————————————————

26  [2]  Defendants vehemently deny Plaintiff's allegations in the Complaint and simply restate them here for purposes of analyzing this Motion.

27  [3]  In the alternative, if the Court is not inclined to dismiss based on Rule 12(b)(3) or the first to file rule, Defendants request transfer under Rule 12(b)(3), or transfer or

28  stay under the first to file rule for the reasons set forth herein.

**B.**     **Alternatively, the First-to-File Rule Compels Dismissal, Stay, or Transfer of this Action in Favor of the First-Filed Action.**

Courts consider three threshold factors when applying the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues.  *Alltrade*, 946 F.2d at 625.  This rule "was developed to serve [] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade*, 946 F.2d at 625 (citations omitted).  In addition to judicial efficiency, this rule helps prevent "the risk of inconsistent decisions that would arise from multiple litigations of identical claims."  *Ruckus Wireless, Inc. v. Harris Corp.*, 2012 WL 588792, at *2 (N.D. Cal. Feb. 22, 2012); *see also Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979) ("The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.").  Each factor of the first-to-file rule is satisfied here, so this action should be dismissed in favor of the earlier filed suit in the Southern District of New York involving virtually the same issues and parties. Moreover, dismissal will promote judicial efficiency by avoiding conflicting judgments concerning Defendants' use of the Silhouettes Design.  To the extent the Court does not find dismissal appropriate, Defendants seek an order staying or transferring the current action in favor of the earlier filed suit in the Southern District of New York.

1.     The New York Action Was Filed First

Defendants filed the New York Action on October 15, 2020.  *See* Ex. A to Goodrich Decl.  Plaintiff then filed this action on November 10, 2020.  ECF No. 1. Thus, the chronology of the two suits supports application of the first-to-file rule.  *See Guthy-Renker*, 179 F.R.D. at 270 (applying first-to-file rule where declaratory judgment action filed before patent infringement suit); *Puri*, 2011 WL 6257182 at *2.

///

///

1

2.      The Parties In Both Actions Are The Same

2          The first-to-file rule is further satisfied when the competing actions involve the

3    same or substantially similar parties. *Kohn*, 787 F.3d at 1240.  Parties are

4    "substantially similar" for the purposes of the rule if "additionally named defendants in

5    the two actions are merely derivative . . . of the primary parties." *Guthy-Renker*, 179

6    F.R.D. at 270; *see also Int'l Growers Supply, Inc. v. Atlantis Hydroponics, Inc.*, No.

7    CV-1203274, 2012 WL 13013415, at *2 (C.D. Cal. Aug. 8, 2012) (finding executives

8    brought into second suit derivative of the primary party).  It is undisputed that the New

9    York Action involves the same parties—WeWoreWhat, Onia, and CV—as the instant

10   suit, but with their roles reversed.  The only difference is that, in the instant suit, CV

11   has brought claims against Bernstein, who is the co-owner of WeWoreWhat, and

12   therefore is merely derivative of the primary parties.[4]  As neither action involves

13   different or non-derivative parties, this factor, too, weighs in favor of dismissal in view

14   of the New York Action.

15

3.      The Issues In Both Actions Are Substantially Similar

16          The final consideration in applying the first-to-file rule is the similarity of the

17   issues in the two actions. *Kohn*, 787 F.3d at 1241.  Again, the issues need not be

18   identical—there need only be "substantial overlap" between the two suits. *Id.*, *see also*

19   *Gunthy-Renker*, 179 F.R.D. at 270 (finding declaratory action and patent infringement

20   action substantially similar where both involved construction and application of the

21   same patent, even though first filed suit also concerned additional patents); *Pacesetter*,

22   678 F.2d at 95–96 (issues sufficiently similar where claims in both suits focused on

23   same three patents, even though parties sought different remedies).  Here, the central

24   question to be decided in both actions is the right to use Defendants' Silhouettes

25   _____

26   [4]   While Plaintiff has also brought suit against some retailers who sell the allegedly
     infringing goods, their involvement is not relevant to this analysis as this motion is
27   only being brought on behalf of Defendants.  While Defendants believe that at least
     one of the retailers was served on or around January 15, 2021, since Plaintiff has
28   failed to file the proof of service within 5 days as required under this Court's
     Standing Order, Rule 1, it is unclear which ones were indeed served.

10

Design.  Because the issues presented in Plaintiff's action form the basis of Defendants' request for declaratory relief in the New York Action, it will be more efficient to consider the New York Action first, or, at the very least, consider the cases together.  Thus, this factor weighs in favor of applying the first-to-file rule here and dismissing this action in view of the New York Action.

**C.    No Compelling Circumstances Bar Application Of The First-To-File Rule Here**

Where there is a substantially similar identity of parties and issues between two related lawsuits pending in different jurisdictions, the first-to-file rule should apply in the absence of any compelling equitable considerations making its use unjust.  *Gunthy-Renker*, 179 F.R.D. at 270; *Alltrade*, 946 F.2d at 627–628.  The primary exceptions to the rule are circumstances indicating bad faith, an anticipatory suit, and forum shopping.  *Alltrade*, 946 F.2d at 628.  Courts also consider the relative convenience of the two forums.  *Id*.; *see also Gunthy-Renker*, 179 F.R.D. at 272-273.  None of the exceptions to the first-to-file rule apply here.

1.    Defendants Commenced The New York Action In Good Faith

There is no indication that Defendants commenced the New York Action in bad faith or with any improper motive.  Before initiating their suit, Defendants engaged in discussions regarding the issues with Plaintiff for many months, making clear that they did not infringe any rights held by CV and would not concede to CV's demands.  *See* Ex. B to Goodrich Decl. at ¶¶ 6–13.  While Defendants provided support for non-infringement and continually requested evidence to support Plaintiff's claims, Plaintiff failed to provide any evidence to Defendants or actively engage in productive conversations about why it was continuing to pursue its claims.  *Id.* at ¶¶ 10–13.

Plaintiff's increasingly aggressive position and consistent unwillingness to disclose any evidence to support it claims made clear to Defendants that Plaintiff was not going to drop its baseless allegations.  Further, the claims made by Plaintiff in the draft complaint sent on October 13, 2020, lacked merit and could not have been filed

11

1   in the form they were in as the draft complaint was woefully deficient regarding

2   personal jurisdiction as Defendants have no ties to California besides internet sales.

3   *See Adobe Sys. Inc. v. Trinity Software Distribution, Inc.*, No. C 12-1614 SI, 2012 WL

4   3763643, at *5–8 (N.D. Cal. Aug. 29, 2012) (finding the use of a website along with

5   relationships with California businesses insufficient to find personal jurisdiction); *see*

6   *also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) ("[T]he fact that

7   [defendant's] website is not directed at California is controlling.").  In an attempt to

8   convey jurisdiction in California in this instant suit, CV revised its specific allegations

9   about why the CV Design was allegedly infringed in California and also named as

10  additional defendants third party retailers not related to the Defendants who happen to

11  have physical store locations in California.  *Compare* Ex. B-3 to Goodrich Decl. at

12  ¶¶ 12–14; *with* ECF No. 1 at ¶¶ 12–17.

13          Defendants accordingly commenced the New York Action based on their

14  reasonable apprehension that they could be subject to liability if they continued to use

15  their Silhouettes Design, without a declaration from the Court that their design does

16  not infringe the CV Design.

17          2.    The New York Action Is Neither Anticipatory Nor An Attempt At

18                Forum Shopping

19          A lawsuit is considered "anticipatory" if it was filed "on receipt of specific,

20  concrete indications that a suit by the defendant was imminent."  *Mindscope Prod. v.*

21  *Ontel Prod. Corp.*, No. cv-16-2066, 2016 WL 7479358, at *4 (C.D. Cal. June 16,

22  2016).  Such suits are disfavored because they are examples of forum shopping.

23  *Guthy-Renker*, 179 F.R.D. at 272 (this exception seeks to "eliminate the race to

24  courthouse door in an attempt to preempt a later suit in another forum").  However,

25  "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to

26  hear it . . . is not in itself improper anticipatory litigation or otherwise abusive forum

27  shopping."  *Strukmyer LLC v. Inifinite Financial Solutions*, No. 3:13-cv-3798, 2013

28  WL 6388563 at *7 (N.D. Tex. Dec. 5, 2013).  For example, suits filed after "veiled

12

1   threats of litigation" but not in response to a specific indication of an imminent suit are

2   not considered anticipatory for the purposes of the first-to-file rule. *See Guthy-Renker*,

3   178 F.R.D. at 271. Moreover, suits filed in a parties' home forum do not amount to

4   impermissible forum shopping. *See KTS Karaoke, Inc. v. EMI Blackwood Music, Inc.*,

5   No. cv-1300915, 2013 WL 12171968 at *2 (C.D. Cal. Mar. 25, 2013); *Stomp, Inc. v.*

6   *Neato, LLC*, 61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999).

7       Here, Plaintiff had threatened to sue in a forum that was not home to any of the

8   parties, where none of witnesses were located, where none of the operative events at

9   issue occurred, where none of the relevant documents and sources of proof are located,

10   and where the court will have trouble compelling the attendance of unwilling

11   witnesses. *See* Ex. A to Goodrich Decl. at ¶¶ 2–4. In addition, Plaintiff has conceded

12   that jurisdiction and venue are proper in New York by answering the complaint there

13   and admitting jurisdiction and venue are proper. *See* Ex. F to Goodrich Decl. at ¶¶ 5–

14   11. Plaintiff has also admitted that "there is a case or controversy based on a real and

15   immediate injury or threat of future injury that is caused by Defendant," and that "[a]

16   justiciable controversy exists between Plaintiffs and Defendant as to whether Plaintiffs

17   infringe or violate Defendant's copyright or other rights, and there is sufficient

18   immediacy and reality to warrant the issuance of a declaratory judgement." *See* Ex. F

19   to Goodrich Decl. at ¶ 11. Because the anticipatory filing doctrine concerns whether a

20   court will exercise subject matter jurisdiction over a declaratory judgment action, this

21   issue appears to fall under Federal Rules of Civil Procedure 12(b)(1). As Plaintiff has

22   failed to move to dismiss the New York Action under any grounds, it has specifically

23   waived its right to do so under Rule 12(b). ("A motion asserting any of these defenses

24   must be made before pleading if a responsive pleading is allowed.").

25       Moreover, Plaintiff has brought an affirmative defense in the New York Action

26   that "[WeWoreWhat and Onia's] declaratory judgement claim fails to present a

27   justiciable controversy between the parties." Ex. F to Goodrich Decl. at 9. While this

28   directly contradicts its earlier admissions that there is a justiciable controversy between

13

the parties in the New York Action, it begs the question of how Plaintiff met its obligation under Federal Rule of Civil Procedure 11 to file this suit if there is no justiciable controversy between the parties.[5]

### 3. The New York Action Is Convenient For Both Parties

As discussed above, the Southern District of New York is convenient for all parties as all parties have connections to that district, both sell their goods in stores in that district and have their principal places of business there, and ease of access to witnesses and proof is also available in that district. *See* ECF No. 1 at ¶ 11; *see also* Ex. A to Goodrich Decl. at ¶¶ 2–4; Ex. F to Goodrich Decl. at ¶ 4. There does not appear to be any connection to the Central District of California for Plaintiff besides its desire to bring suit there. *Id*. While that fact is not to be discounted, Plaintiff cannot seriously claim that litigating in the Southern District of New York, as opposed to the Central District of California, would be prejudicial or burdensome.

### D. **Alternatively, This Action Should Be Transferred To The Southern District Of New York Under 28 U.S.C. § 1404(a)**

To the extent the Court does not dismiss, stay, or transfer the case based on the first-to-file rule, the Court should transfer this case to the Southern District of New York as the factors all favor (or are neutral) such a decision.

### 1. Plaintiff Could Have Brought This Action in the Southern District of New York

As a threshold matter, transfer under Section 1404(a) is only appropriate if the action could have been brought in the transferee venue. 28 U.S.C. § 1404(a); *see also Roling v. E*Trade Secs., LLC*, 756 F. Supp. 2d 1179, 1184 (N.D. Cal. 2010) ("The threshold question under Section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought.") (citations

---

[5] If Plaintiff continues to assert unsupportable claims, Defendants intend to put Plaintiff on notice of its obligations under Rule 11 as it relates to pursuing such unsupported claims.

14

1  omitted).  Venue is proper in the judicial district in which a substantial part of the

2  events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b)(2).

3  As both Plaintiff and Defendants are incorporated in New York City, are

4  operating their principal places of business there, and the allegedly infringing goods

5  are being sold there, the instant action could have been brought in the Southern District

6  of New York.  *See* ECF No. 1 at ¶ 11; *see also* Ex. A to Goodrich Decl. at ¶¶ 2–4; Ex.

7  F to Goodrich Decl. at ¶ 4.  Thus, a substantial part of the events or omissions giving

8  rise to Plaintiff's claims occurred in the Southern District of New York.

9        2.  <u>The Balance of The Convenience Factors Favors the Southern</u>

10           <u>District of New York.</u>

11 Here, apart from Plaintiff's choice of forum in the Central District of California,

12 the factors favor transfer of this action to the Southern District of New York or are

13 neutral.

14       a.  *Factors 1, 2, And 9 Are Not Applicable And Do Not Alter*

15           *The Transfer Analysis*

16 *Jones* factors 1, 2, and 9 are inapplicable and do not affect the transfer analysis.

17 Jones factor 1—"the location where the relevant agreements were negotiated and

18 executed"—is inapplicable because there are no relevant agreements between Plaintiff

19 and Defendants.  *Jones* factor 2—"the state that is most familiar with the governing

20 law"—is likewise inapplicable because both districts are familiar with and can apply

21 federal copyright laws to this copyright infringement case; both districts are likewise

22 familiar with and can apply the Lanham Act to the unfair competition claims.  And

23 Jones factor 9—"the presence of a forum selection clause"—is irrelevant because there

24 is no contract and involved and thus no forum selection clause.

25       b.  *Factor 3 Is Neutral Or, At Best, Only Slightly Disfavors*

26           *Transfer*

27 *Jones* factor 3, "the plaintiff's choice of forum" is neutral, or, at best, militates

28 only slightly against transfer.  Deference granted to a plaintiff's choice of forum is

diminished where, as here, the plaintiff's choice of forum lacks a significant connection to the events giving rise to the complaint. *Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, No. 1:08-cv-1246, 2009 WL 874513, at *2 (E.D. Va. Mar. 27, 2009) ("Even when the plaintiff sues in its home forum, that fact is not by itself controlling and the weight of that factor depends on the nexus tying the case to the forum."). Here, there are no particular contacts tying the Central District of California to the facts underlying this dispute or the copyright at issue. The parties are all located in the Southern District of New York. Even the "studio" that Bernstein allegedly visited in 2018 was located in the Southern District of New York. *See* ECF No. 1. at ¶ 2. Thus, this factor is neutral.

c.      *Factors 4 And 5 Weigh In Favor Of Transfer*

*Jones* factor 4, "the respective parties' contacts with the forum" and *Jones* factor 5, "the contacts relating to the plaintiff's cause of action in the chosen forum" both weigh in favor of transfer to the Southern District of New York. As discussed above, the parties are all domiciled in the Southern District of New York, with their principal places of business located there as well. *See* ECF No. 1 at ¶ 11; *see also* Ex. A to Goodrich Decl. at ¶¶ 2–4; Ex. F to Goodrich Decl. at ¶ 4. While the parties do conduct business on the internet and sales are made to consumers in California, such contact is insufficient to even convey personal jurisdiction. *See Adobe Sys.*, 2012 WL 3763643, at *5–8; *see also Pebble Beach*, 453 F.3d at 1158. Thus, these factors weigh in favor of transfer.

d.      *Factors 6, 7, And 8 Weigh In Favor Of Transfer*

Jones factor 6, the "differences in costs of litigation in the two forums," and *Jones* factor 8, "the ease of access to sources of proof," weighs in favor of transfer. The majority of both parties' witnesses are located in New York and the physical evidence, if not electronic, will likely be located there as well. *See* Goodrich Decl. at ¶¶ 7–10. Travel and other costs associated with collecting testamentary evidence from

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER

these witnesses will be significantly reduced if the case is transferred.[6] *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions."). Thus, transfer to the Southern District of New York would make it more convenient and less costly for the parties because they could litigate both actions in a coordinated fashion.

*Jones* factor 7, "the availability of compulsory process to compel attendance of unwilling non-party witnesses," at trial also favors transfer. According to Federal Rule of Civil Procedure 45, a subpoena may command a person to attend a trial or hearing "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Thus, witnesses who are outside of the jurisdiction of the court and are more than 100 miles away from the courthouse cannot be compelled to testify at trial. While the complaint does not identify any third party witnesses that might be relevant, it is likely that if any are identified, they are going to be located in the Southern District of New York since all parties are based there.

        e.    *Factor 10 Favors Transfer To The Southern District Of New York*

*Jones* factor 10, "the relevant public policy of the forum state," also weighs in favor of transfer. There is no valid reason to burden the docket of the Central District of California when there is already a first-filed case in the Southern District of New York and it is more convenient to litigate this case there.

        3.    <u>This Action Should be Transferred In the Interests of Justice</u>

While convenience of the witnesses and the parties are paramount to the consideration of a motion to transfer, "consideration of the interest of justice, which

---

[6] For example, the cost for a three day trip to Los Angles is currently around $1050. *See* Goodrich Decl. at ¶ 11; *see also* Ex. E to Goodrich Decl. However, this figure is likely far lower than average due to the global pandemic that has been going on since March 2020. *Id.*

17

1   includes judicial economy, may be determinative to a particular transfer motion, even

2   if the convenience of the parties and witnesses might call for a different result." *Puri*,

3   2011 WL 6257182 at *3.  A related action pending in the transferee forum is a

4   significant factor in evaluating the interest of justice factor.  *Id*.; *see also Jolly v.*

5   *Purdue Pharma LP*, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005).  "To permit a

6   situation in which two cases involving precisely the same issues are pending in

7   different District Courts leads to the wastefulness of time, energy and money that §

8   1404(a) was designed to prevent." *Continental Grain Co. v. The Barge FBL-585*, 364

9   U.S. 19, 26–27 (1960).

10      Here, there is a related, first-filed action in the Southern District of New York.

11  The Court therefore must consider not only the convenience of litigating this action

12  alone in the Southern District of New York, but "whether it would be more convenient

13  to litigate the two actions separately or in a coordinated fashion." *Puri*, 2011 WL

14  6257182 at *3.  Given the substantial overlap in issues, witnesses, and evidence in the

15  two actions, the interests of justice strongly favor litigating these actions together so as

16  prevent duplicative and potentially inconsistent judicial determinations.  And the New

17  York Action's status as first-filed action coupled with the other convenience factors

18  described above, compels transfer of this action to the Southern District of New York.

19  **V.   CONCLUSION**

20      For the foregoing reasons, Defendants respectfully request that the Court

21  GRANT its motion and dismiss this action pursuant to Federal Rule of Civil Procedure

22  12(b)(3) because venue is improper in this District.  Alternatively, and in view of the

23  first-filed action in the United States District Court for the Southern District of New

24  York, Defendants respectfully request that the Court GRANT its motion and dismiss

25  this action.  Lastly, and to the extent the Court does not dismiss the action, Defendants

26  respectfully request that the Court GRANT its motion and stay or transfer this action in

27  favor of the first-filed action in the United States District Court for the Southern

28  District of New York, or transfer pursuant to 28 U.S.C. Section 1404(a).

1

2     DATED:  January 26, 2021                    **K&L GATES LLP**

3
                                         By:  */s/ Christina N. Goodrich*
4                                             Christina N. Goodrich

5                                             Attorney for Defendants
                                              WeWoreWhat LLC, Onia, LLC and
6                                             Danielle Bernstein

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, STAY, OR TRANSFER**